WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

Philadelphia Indemnity Insurance Company, a Pennsylvania insurance company,

   Plaintiff,

v.

Karen Ann Davis,

   Defendants,
_____

Karen Ann Davis and Charles Davis, husband and wife,

   Plaintiff,

v.

Philadelphia Indemnity Insurance Company, a Pennsylvania insurance company,

   Defendants.
_____

CV 04-178 TUC DCB

**O R D E R**

  The Court finds that there are material issues of fact in dispute which prevent the entry of summary judgment in favor of Philadelphia Indemnity Insurance Company.

<u>Standard of Review for Summary Judgment</u>

  On summary judgment, the moving party is entitled to judgment as a matter of law if the Court determines that in the record before it there exists "no genuine issue as to material fact." Fed.R.Civ.P. 56(c). In determining whether to grant summary judgment, the Court views the facts and inferences from these facts in the light most favorable to the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact is any factual dispute that might effect the outcome of the case under the governing substantive law. *Id.* at 248. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the non-moving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, but is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986). The moving party is under no obligation to negate or disprove matters on which the non-moving party bears the burden of proof at trial. *Id.* at 325. Rather, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Id.*

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed.R.Civ.P. 56(e)). To carry this burden, the party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers. *Anderson*, 477 U.S. at 252. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

This trilogy of 1986 cases ushered in a "new era" of summary judgment motions for the federal courts. *See Rand v. Rowland*, 154 F.3d 952, 956 -957 (9th Cir. 1998) ("It took nearly fifty years for the Supreme Court to pave the way toward mainstream acceptance of the summary judgment procedure with its trilogy of summary judgment cases in the mid-1980s.") In their aggregate, they opened the door for the district courts to rely on summary judgment to weed out frivolous lawsuits and avoid wasteful trials. *Id.* at 956-957; 10A Charles A Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*, § 2727, at 468 (1998). As

explained in *Celotex*: "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "If evidence is merely colorable ... or is not significantly probative, summary judgment may be granted." *Eisenberg v. Insurance Co. of North Am.*, 815 F.2d 1285, 1288 (9th Cir. 1987).

Motions for summary judgment should be viewed "not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (citations omitted). Accordingly, the rules governing motions for summary judgment should be enforced with regard not just for rights of the nonmovant, but also for the rights of the party contending that there exists no genuine issue of material fact. *Id.*

The Judge's role on a motion for summary judgment is not to determine the truth of the matter or to weigh the evidence, or determine credibility, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 252. The inquiry mirrors the standard for a directed verdict: whether the evidence presented reveals a factual disagreement requiring submission to a jury or whether evidence is so one sided that one party must prevail as a matter of law.

<u>Philadelphia Indemnity's Motion for Summary Judgment</u>

<u>Introduction:</u> On October 23, 2002, Plaintiff Ms. Davis was involved in a two-vehicle car accident in Phoenix, Arizona. She was driving a van owned and insured by her employer, Portable Practical Education Preparation (PPEP). She turned left into oncoming traffic and was struck by a vehicle driven by Benjamin Waggener. She asserted a claim for under-insured motorist (UIM) benefits under PPEP's insurance, issued by Philadelphia Indemnity.

Both parties filed declaratory judgment actions in relation to the under-insured claims made by Ms. Davis, and the two actions were consolidated in this Court.

1   Philadelphia Indemnity correctly asserts that UIM coverage applies "only if Mrs. Davis 'is legally entitled to recover . . . compensatory damages from the . . . driver of an 'underinsured motor vehicle.'" (Motion for Summary Judgment (MSJ) at 2.)

Negligence per se:  It is undisputed evidence establishes that Ms. Davis turned left directly into the path of Mr. Waggener's vehicle immediately before impact in violation of Arizona law that places a duty on the driver of a vehicle intending to turn left to yield the right-of-way to an oncoming vehicle that is within the intersection or so close to the intersection as to constitute an immediate hazard.  A.R.S. 28-772.  Philadelphia Indemnity argues that, therefore, Ms. Davis is negligent per se, her negligence caused the accident, and the Court should conclude as a matter of law that she was at fault. (MSJ at 4 (citing *Smith v. Johnson*, 899 P.2d 199, 204 (Ariz. App. 1995) (the left-turning driver must yield to oncoming traffic, regardless of whether he diligently looks for such traffic).

Plaintiffs respond that Mr. Waggener was at fault because he was speeding, and he was driving without turning on the headlights of his vehicle.  Plaintiff points out that both of these alleged failures by Mr. Waggener are also violations of Arizona safety statutes and are, therefore, negligence per se.

In Arizona, safety statutes designed to protect the public do not impose strict liability for a technical violation.  *Dayton v. Palmer*, 400 P.2d 855, 186-187 (Ariz. App. 1965).  The statutory prescription of due care required under given conditions may be excused by showing that the failure to comply with the statute was without fault. *Id.* "[I]n Dayton the court affirmed a jury verdict for the defendant even though the defendant's vehicle rammed the plaintiff's vehicle from behind at an intersection.  The court found that the issue of the defendant's negligence was a question of fact for the jury when the evidence supported a finding that the defendant's technical violation of the motor vehicle code resulted from sudden and unforeseeable brake failure." (Response to MSJ (Response) at 8.)

Section 288A of the Restatement (Second) of Torts affords an excuse due to: 1) incapacity; 2) ignorance of the occasion for compliance, and greater risk of harm from compliance.  Here, Ms. Davis relies on ignorance of the occasion for compliance because if Mr.

1  Waggener had his headlights off she did not know, or could not have known, that she needed
2  to yield to oncoming traffic.

3  <u>Evidentiary challenges:</u>  Mr. Waggener asserts that the headlights on his vehicle were
4  turned on, and Philadelphia Indemnity asserts that there is no admissible evidence to show the
5  contrary.  Additionally, even if his headlights were not turned on there was ample street lighting
6  and other lighting from the surrounding businesses for Mrs. Davis to have seen his vehicle.
7  (MSJ, SOF, Ex. K: Expert Report, November 21, 2004.) Philadelphia Indemnity suggests that
8  assertions of speeding stem from an inaccuracy in the police report that identified the speed
9  limit as 35 mph, when in fact it is 40 mph.

10  Plaintiffs' expert examined the accident scene on February 3, 2005, and found that the
11  speed limit was 40 mph, which does conflict with the 35 mph speed limit recorded in the
12  accident report, prepared on October 23, 2002.  Nevertheless, Mr. Waggener testified at his
13  deposition that he may have been traveling "40, 45 miles an hour.  Maybe faster." (Waggener
14  Depo. at 17.)  He responded that he may "possibly" have been going over 50 mph.  *Id.* at 25.
15  Mr. Waggener's friend and passenger in the car at the time of the accident, Jeremy Peterson,
16  testified at his deposition that Mr. Waggener had a tendency to speed and that he had to keep
17  on him generally to slow down.  (Peterson Depo. at 11; 25-27.)  Mr. Peterson could not recall
18  specifically telling Mr. Waggener to slow down on the night of the accident, but said that Mr.
19  Waggener "might have been going too fast through the mountains," and "he might have said
20  something."  *Id.* at 27.

21  Both Mr. Waggener and Mr. Peterson were emphatic that the car lights were turned on
22  because they had just traveled through a dark stretch of road, where they would have been
23  unable to see without headlights.  (Waggener Depo. at 30; Peterson Depo. at 9, 19.)  They also
24  believed that business lights illuminated the intersection so that Ms. Davis could have seen Mr.
25  Waggener's vehicle even if its lights were off.  (Waggener Depo. at 22; Peterson Depo. at 20.)

26  Mrs. Davis was severely injured in the accident, including a serious head injury, and has
27  no memory of the moments before, during, or after the accident.  She does not know whether
28  or not the headlights on Waggener's vehicle were on or off.

Talbot Brooks witnessed the accident. He was driving a 1996 Jeep Cherokee east-bound on McDowell Road. (Brooks Affidavit at 2.) He followed Plaintiff, east-bound, into the left-hand turn lane and stopped directly behind her. *Id.* at 4, 6. He attests that he was looking at the westbound lanes of traffic to ascertain if it was safe for him to follow her and turn left across the westbound lanes of McDowell. *Id.* at 8. He attests that he did not see Mr. Waggener's BMW until it struck Ms. Davis' minivan "in spite of the fact that [he] was specifically looking at the westbound lanes of traffic in order to make [his] own turn." *Id.* at 10. "If the BMW had been driving with its headlamps turned on, [he] would have seen the headlamps." *Id.* at 11.

Philadelphia Indemnity moves to strike the paragraphs of Davis' responsive Statement of Facts that rely on Brooks' affidavit because "he cannot testify to what Mrs. Davis saw or could have seen" and "'negative evidence' may be probative of a genuine issue of material fact 'only if coupled with a sufficient predicate, consisting of additional testimony or circumstances to show that the witness' position and attitude of attention were such that he probably would have heard or seen the occurrence of the event if it happened." (Motion to Strike at 3 (quoting *Byars v. Arizona Pub. Serv. Co.*, 539 P.2d 534, 538 (Ariz. 1975)).[1] Philadelphia Indemnity asserts that in a prior recorded statement, "Mr. Brooks stated that his view was obstructed by the van, specifically the left-hand or driver's side of the van." (Motion to Strike at 3.) Therefore, Philadelphia Indemnity argues that Mr. Brooks' affidavit is inadmissable because it has no foundational requisite for being probative as to whether or not Mr. Waggener had the headlights turned on or off on his car. The Court finds, however, that any doubts existing in the affidavit regarding Mr. Brooks' position and attitude of attention to ascertain Mr. Waggener's vehicle is only strengthened by his prior recorded statement.

Mr. Brooks' recorded statement is as follows. It was after dark; the time of night when all the vehicles had their lights on. (Reply to MSJ, Ex. M: Brooks' Recorded Statement of

---

[1] Philadelphia Indemnity argues that negative evidence can only be used to show that an event did not occur so Mr. Brooks' testimony could only be used to "prove that the Waggener vehicle was not there." (Reply to MSJ at 5.) For the same reason that such evidence might suggest the vehicle was not there, which here would be a preposterous conclusion, the evidence also arguably suggests that the lights were not there, i.e. not turned on.

November 10, 2002 at 4, 5.) He was driving east-bound on McDowell, with two passengers in his jeep, to the Sonic. *Id.* at 4. He observed the minivan in front of him and followed it for fifty to a hundred yards into the left turn lane. *Id.* at 6. He recalled being stopped in the left turn lane long enough to see other traffic coming from the other direction and remembered seeing their headlights, and waiting for those vehicles to pass. *Id.* at 8. He remembered looking at the oncoming traffic because he had to make the same turn so he was watching to see what the traffic conditions were, and he reported being very surprised when she was struck because he had not seen an oncoming vehicle. *Id.* at 9. He recalled seeing headlights at the time she made her turn, but that they were considerably further down the street. *Id.* He was six to ten feet behind her when she began her turn. *Id.* It appeared to him that it was clear for her to turn, and he intended to continue behind her after coming to a stop and checking. *Id.* She only got about six or seven feet into the westbound lane when Ms. Davis' vehicle was struck by Mr. Waggener's vehicle. *Id.* at 10. He believed that the car that struck her was traveling in the lane closest to the median. *Id.* at 10. He never saw the vehicle that struck her until after the accident. *Id.* at 11. The accident occurred 15 to 20 feet in front of him. *Id.* at 13.

Mr. Brooks also reported that there were street lights, but not very many and from the direction he was facing (east-bound) he did not recall street lights there (the direction from which Mr. Waggener was coming). *Id.* at 4. Mr. Brooks reported that it was dark where Mr. Waggener's vehicle came to rest after the accident so that he could not discern the color of his vehicle. Back in the intersection, most of the lighting was on 50th Street, approximately a 100 or 150 feet south of where the accident occurred. The only other lights Mr. Brooks recalled were ground lights, like the kind used to line sidewalks, and the Sonic was very brightly lit. *Id.* at 16.

While Philadelphia Indemnity is correct that Mr. Brooks reported that when he was stopped in the left turn lane about six to ten feet behind the van, his view would have been obstructed by the left hand or driver's side of the van somewhat, he also said that without recreating the situation he couldn't say what part of his view may have been obstructed. *Id.* at

14. He reported that from his perspective, if Mr. Waggener's vehicle had had its lights on he would have seen it or the cast from the headlights itself. *Id.* at 12.

This is not as Philadelphia Indemnity suggests a case where Mr. Brooks asserts that he simply didn't see Mr. Waggener's car. This is more like the Arizona cases where plaintiffs assert the gas company failed to add an odorant to naturally-odorless gas and courts allow "negative evidence" because the witnesses attest that they were standing near or next to a gas-fueled machine, smelled for gas and/or listened for the sound of a leak, knew what properly odorized gas smelled like, had no defects in their ability to smell, and acted in reliance upon the fact that he or she did not smell gas. As Philadelphia Indemnity recognizes, under such circumstances the evidence is probative of whether the gas was properly odorized. (Reply to MSJ at 4 (discussing *Mast v. Standard Oil Co.*, 680 P.2d 137 (Ariz. 1984); *Byars*, *supra*; *Shell Oil Co. v. Collar*, 407 P.2d. 380 (Ariz. 1965)).

Here, Mr. Brooks was near or next to Ms. Davis, he too was looking for oncoming traffic by looking at the headlights of oncoming cars for the purpose of making a left hand turn, he saw other cars by the light of their headlights, and was prepared to act in reliance on the fact that if he did not see headlights then there were no oncoming cars, and he would turn left. Here, the foundational requisites exist to establish that Mr. Brooks' testimony will be probative as to whether or not Mr. Waggener had the headlights turned on and if not, whether or not Mrs. Davis could have seen his vehicle.

The Court finds that Mr. Brooks' affidavit adequately rebuts Philadelphia Indemnity's assertion that there is no material fact in dispute regarding who was at fault for the accident that occurred when Mrs. Davis turned left into the oncoming path of Mr. Waggener's vehicle. The question of negligence is decidedly factual in nature and summary judgment is only appropriate if no trier of fact could reasonably find for Plaintiffs. *See Celotex*, 477 U.S. at 323 (citing *Liberty Lobby*, 47 y U.S. at 250 (essentially the standard is the same for granting a directed verdict)). Given the record currently before it, this Court cannot find that the evidence is so one sided that Philadelphia Indemnity must prevail as a matter of law. In the event a jury finds that

1  Mr. Waggener was at fault for the accident, Ms. Davis may recover compensatory damages
2  from him. This defeats Philadelphia Indemnity's Motion for Summary Judgment.
3      **Accordingly,**
4      **IT IS ORDERED** that the Motion for Summary Judgment (document 143) is DENIED.
5      **IT IS FURTHER ORDERED** that the Motion to Strike (document 156) is DENIED.
6      **IT IS FURTHER ORDERED** that Davis' Motion to Supplement (document 165) is
7  DENIED; it is unnecessary to supplement the record for purposes of disposing of the summary
8  judgment motion.
9      **IT IS FURTHER ORDERED** that the parties shall file the joint Pretrial Order on
10 February 20, 2006. (See attached form of Order).
11     DATED this 17th day of January, 2006.

David C. Bury
United States District Judge

- 9 -

**FORM OF PRETRIAL ORDER**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

|  |  |  |
|---|---|---|
| Plaintiff, | ) ) ) ) | |
| v. | ) ) ) | CV          TUC DCB |
|  | ) ) | **PRETRIAL ORDER** |
| Defendant. | ) ) ) | |

(Although the text of the pretrial order appears in single space, the actual order submitted by the parties must be double spaced and conform in all other respects to the Local Rules.)

The following are pretrial proceedings in this cause pursuant to Rule 2.12 of this Court, and **IT IS ORDERED**:

I. <u>NATURE OF ACTION</u>
This is an action for: (Short concise statement of the case, including the nature of the action and the relief sought.)

II. <u>STATEMENT OF JURISDICTION</u>
Statement of jurisdiction: (state the claims and cite the statutes which give this Court jurisdiction over each claim.)

III. <u>CONTESTED ISSUES OF LAW/FACT</u>

State the ultimate issues of fact and law which must be decided at trial. State only the issues of fact and law necessary and material for a verdict in this case. Each issue must be stated separately and specifically.

IV. <u>LIST OF EXHIBITS</u>

Each party shall list the exhibits it intends to offer at trial.

V. <u>LIST OF WITNESSES</u>

Each party shall list the witnesses it intends to call at trial.

VI. <u>JURY TRIAL or BENCH TRIAL</u>

The parties shall state whether the trial is a jury or bench trial.

<u>For a Jury Trial</u>

At the Pretrial Conference, the Court will direct the parties to file proposed voir dire, objections to exhibits, deposition testimony, stipulated jury instructions, counsel's additional proposed jury instructions, motions in limine, and trial memoranda 15 days prior to trial. Any opposition shall be filed five days thereafter.

<u>For a Bench Trial</u>

At the Pretrial Conference, the Court will direct the parties to file trial briefs, objections to exhibits, motions in limine, and proposed findings of fact and conclusions of law 15 days prior to trial. Any opposition shall be filed five days thereafter.

VII. <u>PROBABLE LENGTH OF TRIAL</u>

Each party shall identify the estimated length of time it will take to present its case.

VIII. <u>CERTIFICATION</u>

The undersigned counsel for each of the parties in this action do hereby approve and certify the form and content of this proposed Joint Pretrial Order.

_____         _____
Attorney for Plaintiff                                   Attorney for Defendant

This Joint Pretrial Order is hereby approved on this ___ day of _____, 2004.

_____
David C. Bury
United States District Judge